Ronald F. Waterman, Esq.
Julie A. Johnson, Esq.
GOUGH, SHANAHAN, JOHNSON & WATERMAN
P.O. Box 1715
Helena, MT 59624
406/442-8560

Peter J. Neufeld, Esq.
Monica R. Shah, Esq.
COCHRAN, NEUFELD & SCHECK, LLP
99 Hudson Street
New York, NY 10013
212/965-9380

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JIMMY RAY BROMGARD, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. CV-05-32-BLG-RFC-CSO |
| STATE OF MONTANA, COUNTY OF YELLOWSTONE, CHAIRMAN BILL KENNEDY, COMMISSIONER JOHN OSTLUND, COMMISSIONER JIM RENO, ARNOLD MELNIKOFF, and MIKE GREELY, | ) **PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO STATE DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S SIXTH SET OF REQUESTS TO THE STATE OF MONTANA AND MIKE GREELY** |
| Defendants. | ) |

COMES now Plaintiff Jimmy Ray Bromgard and files this brief in response to State

Defendants' motion for a protective order relative to Plaintiff's Requests for Productions Nos. 31

and 32, both of which relate to Melnikoff's hair association in the Barry Beach case.

## INTRODUCTION

State Defendants are under a court order to produce actual hair samples in cases where Melnikoff made a positive hair association or, if they cannot produce the hair samples, "defendants shall explain this in their supplemental response and shall detail the efforts made to obtain the materials." Order dated 3/20/06 (docket 83).

In the Barry Beach case, Defendant Melnikoff alleged in his crime lab report to have matched a pubic hair located at the murder scene to the known pubic hair standard of Mr. Beach. As in Mr. Bromgard's case, Melnikoff's match was the <u>only</u> forensic evidence that tied Mr. Beach to the scene of the crime. Beach, like Bromgard, has maintained his innocence throughout his incarceration.[1]

Accordingly, Plaintiff requested the pubic hair found at a murder scene that Melnikoff positively associated to pubic hair of Barry Beach, thus linking Mr. Beach to the crime. Although the State Defendants have turned over to Plaintiff all the hair evidence in the Beach case they claim they could locate, they have not turned over the pubic hair. They have informed the Plaintiff that they cannot locate the pubic hair that Melnikoff matched to Barry Beach. Again, this hair is the only probative hair and is necessary to determine whether Melnikoff fabricated inculpatory evidence against Beach as he did against Bromgard. By failing to locate

---

[1] On March 1, 2007, the Montana Board of Pardons and Parole will hold a public hearing to consider Beach's petition for clemency at Montana State Prison. Counsel for Plaintiff does not represent Mr. Beach in those proceedings. Nevertheless, the importance of locating the pubic hair which Melnikoff relied on to link Beach to the murder cannot by overstated. The State and its agents have an ethical and moral duty to make every effort to locate the hair as soon as possible or in the event they do not locate it, to provide the most complete record possible as to the efforts made and outcome.

*Plaintiff's Response Brief in Opposition to State Defendants' Motion for Protective Order*
*Regarding Plaintiff's Sixth Set of Requests to the State of Montana and Mike Greely*       PAGE 2

and provide this critical hair sample, Bromgard has been prevented from re-examining the pubic hair and learning whether Melnikoff made yet another incorrect hair association. As the Court is aware, in the first three felony convictions in Montana in which post conviction DNA testing exonerated, all three involved Melnikoff's hair examinations. There is reason to believe that Barry Beach may be the fourth.

According to the chain of custody documents provided by the State Defendants, on November 14, 1983, the State Crime Lab received the sweater of the victim. *See* Exhibit 1 (WLF No. 607359). Apparently one of the hairs on the sweater, identified by Melnikoff as CU100 A27, was later matched by Melnikoff to Barry Beach.[2] On December 2, 1983, Melnikoff received pubic hair standards of Barry Beach. *See* Exhibit 3 (WLF No. 607338). These slides were examined microscopically and used as known standards of Barry Beach's pubic hair. *Id.* Melnikoff then compared Beach's known pubic hair standards against another pubic hair. In a later report dated December 13, 1983, Melnikoff wrote that the pubic hair on the sweater was "characteristic of the suspect, Barry Allen Beach's pubic hair, " thereby inculpating Beach. Exhibit 1 (WLF No. 607359).

The pubic hair from the sweater was apparently returned to the Roosevelt County Sheriff's Department on December 6, 1983. According to the handwritten chain of custody logs from the Crime Lab, Beach's pubic hair standards were returned at trial by A.B.M., Arnold Melnikoff, on April 10, 1984. Exhibit 4, lines 5, 6. This evidence was lodged with the Clerk of

---

[2] *See* Exhibit 2, Prosecutor's Opening Statement in State v. Barry Beach, p. 315 of trial transcript, wherein the prosecutor stated: "[T]here was a pubic hair belonging to the defendant. They [Montana State Crime Lab witnesses] will tell you... that this hair located on the sweater of Kim Nees was in fact the defendant's."

Court the same day and remained there until State Defendants had it removed from the Clerk of Court on May 11, 2006. *See* Exhibit 5, copy of envelope stored in the Clerk of Court Office "Filed Apr. 10, 84" by Clerk of Court; Exhibit 6 (showing chain of custody of "pubic hair removed from Clerk of Court's files" to "State Lab").

Therefore, the chain of custody records show that the hair was last sent to the Roosevelt County Sheriff's Department and that they are in possession of the pubic hair. The State Defendants must either produce it, which they claim they cannot, or detail their efforts to locate it, which they refuse to. State Defendants must make every effort to account for why they cannot produce the pubic hair as ordered by this Court. Given that this hair evidence has the potential of releasing an innocent man from prison, the State should have made every effort to locate this hair. Perhaps State Defendants do not want to produce documents reflecting their efforts because they have not made every effort to locate this potential exonerating piece of evidence. By filing this motion for a protective order, State Defendants ask the Court to sanction its refusal to provide information relative to the whereabouts of this critical piece of hair evidence.

## ARGUMENT

I. **Request for Production No. 31: Correspondence Reflecting the State's Efforts to Locate Hair Slides in the Barry Beach Case.**

    A. **State Defendants are under a Court Order to Provide the Pubic Hair Melnikoff Examined in the Beach Case in Their Possession, Custody or Control.**

This is not the first time that the State Defendants have resisted providing hairs examined by Melnikoff and information related to his hair examination. Previously, State Defendants challenged Plaintiff's Request for Production No. 9, which had requested State Defendants to:

> Produce any and all documents for each and every instance in which defendant Arnold Melnikoff conducted microscopic hair comparison during his tenure at the Montana Crime Lab, including without limitation trial transcripts, benchnotes, reports, and correspondence and communications with third parties.

State Defendants refused to turn over items responsive to this request and eventually Plaintiff was forced to file a motion to compel. Motion to Compel, filed 1/12/06 (docket 77). In briefing, Plaintiff clarified that he sought the following: "Melnikoff's final reports, the <u>actual hair samples</u> referenced in the final report as the bases of his findings, Kodachrome slides presented at trial or in the report and any trial testimony based on his findings." Reply Brief, filed 2/27/06 (docket 82) (emphasis added).

Federal Magistrate Anderson granted Plaintiff's motion to compel, ruling:

> The materials sought are relevant or may lead to the discovery of relevant information concerning plaintiffs' [sic] claims in this action. Defendants' objections are overruled. Defendants shall produce all such materials in the crime lab files that are in their possession, custody or control. <u>If the defendants are unable to produce materials such as hair sample or slide because they are no longer in the possession, custody or control, defendants shall explain this in their supplemental response and shall detail the efforts made to obtain the materials.</u> The production shall be subject to the confidentiality order entered on June 28, 2005, as amended by the order of December 14, 2005.

Order dated 3/20/06 at 2 (docket 83)(emphasis added). State Defendants unsuccessfully challenged the ruling. Order dated 4/25/06 (docket 91) (adopting Magistrate's Order of 3/20/06 in its entirety).

Apparently, the State Defendants contend that they cannot produce the pubic hair. They casually opine that it is their "understanding" that the hair evidence was returned to Roosevelt County at the time of the trial. This explanation, if that is what it is intended to be, is unsatisfactory. So too are their efforts to locate the missing hair, which is memorialized in one

letter the State sent to Roosevelt County Sheriff's Office dated May 8, 2006 that Roosevelt County never even responded to.

The State's casual approach to locating this very important piece of evidence is not to be tolerated. State Defendants must account why they cannot produce the pubic hair. State Defendants acknowledge that they have other correspondence reflecting previous efforts to locate the missing pubic hair, identified as WLF 250000-250194, but refuse to produce these documents to Plaintiff. Nevertheless, the State must abide by the spirit and intent of the Court's order and either produce the hair or provide all documents in their possession which detail the State's efforts to locate the missing hair.

### B.     The Parties have Entered into a Stipulated Confidentiality Order.

One of the State's grounds for resisting the production of the correspondence is because it may contain confidential information regarding victims, suspects, and witnesses. The parties, however, have entered into two stipulated confidentiality orders, one on June 28, 2005 and another on December 14, 2005. Thus, Defendants' concerns over the dissemination of this confidential information has been addressed and they can no longer resist the production of documents outlining efforts to get this material on this basis.

### C.     Broad Federal Discovery Rules Trump State Law in this § 1983 Action.

As they did in an earlier round of discovery motions, State Defendants incorrectly rely on the Montana Criminal Justice Information Act as a basis for withholding relevant information from the Plaintiff. The inapplicability of the Montana Criminal Justice Information Act to this litigation has already been briefed at length and Plaintiff refers the Court to those arguments. Brief in Support of Motion to Compel filed 1/12/06 at 2-5 (docket 78).

In short, State Defendants have asserted a state-law objection, even though the Federal Rules of Civil Procedure, not state laws, govern discovery in this federal civil rights dispute. Privilege issues are governed by Federal Rule of Evidence 501. Therefore, even if state law forbids disclosure of information which is discoverable under federal law, the federal rule prevails, as "[u]nder the Supremacy Clause of the United States Constitution, a court, in enforcing federal law, may order state officials to take actions despite contravening state laws." *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982).

Moreover, the relevancy of the requested pubic hair is not subject to debate as the Court has already ordered the hair samples to be produced. Nevertheless, the importance of this evidence cannot be overstated. Melnikoff's confirmed error rate is three for three (100%) at this stage. The actual test hairs in Beach are critical to determine whether Melnikoff's association in the Beach case is wrong as it was in the Bromgard, Kordonowy, and Bauer cases. This further evidences an absence of accident or mistake, a consistent practice of unsound lab work, and a motive for perpetuating Melnikoff's faulty methods for fear of being discovered.

D.   **The Attorney-Client Privilege does not Apply to the Correspondence.**

Next, State Defendants claim that the correspondence reflecting their efforts to locate the missing pubic hair is protected by the attorney-client and attorney work product privileges. State Defendants claim that certain portions of the correspondence contain communications between various State agencies. Other portions are communications between the Williams Law Firm and the State agencies. Plaintiff does not seek communications addressed to or from the Williams Law Firm which seek or offer legal advice. Plaintiff does, however, seek the production of the correspondence between the State agencies reflecting their efforts to locate the missing pubic hair

because these documents are not protected by either privilege.

The attorney-client privilege protects "confidential disclosures made by a client to an attorney in order to obtain legal advice. . . ." *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "The attorney client privilege applies to communications between lawyers and their clients <u>when the lawyers act in a counseling and planning role</u>, as well as when lawyers represent their clients in litigation." *Id.* (emphasis added). The party asserting the privilege "has the burden of establishing the relationship and the privileged nature of the communication." *U.S. v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (emphasis added).

Additionally, the State has cited to Montana statutes and case law to invoke the attorney-client privilege. State privilege law, however, does not control in a federal civil rights action. Indeed, "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005); *see also Doubleday v. Ruh*, 149 F.R.D. 601, 610 (E.D. Cal. 1993) (concerning the applicable privilege law "[t]he rule is as follows: if federal claims are asserted, federal law controls; if state claims are asserted. . . , state law controls; in a case with mixed federal and state claims, federal law is controlling; . . . [in] a 42 U.S.C. § 1983 claim, federal law is controlling.").

Under applicable federal privilege law, the State cannot invoke attorney-client privilege to justify not disclosing the documents. "Federal common law recognizes a privilege for communications between client and attorney for the <u>purpose of obtaining legal advice</u>, provided such communications were intended to be confidential." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). As such, "[the] privilege protects confidential disclosures made by a client to an attorney <u>in order to obtain legal advice</u>. . . ." *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).

The party asserting the privilege "has the burden of establishing the relationship and the privileged nature of the communication." *U.S. v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). Indeed, that party "has the burden of establishing all of the elements of the privilege." *U.S. v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).

The attorney-client privilege does not apply to correspondence reflecting efforts to locate the missing pubic hair. The correspondence that State Defendants have deemed responsive related to efforts to locate a critical piece of evidence, not to "obtain legal advice." The State Defendants have failed to meet their burden in claiming that the attorney-client privilege protects correspondence reflecting efforts to locate the missing pubic hair. Documents reflecting efforts to track down evidence, even those originating from the Attorney General's Office, cannot fairly be characterized as legal advice offered in a counseling role or in the context of litigation. "That a person is a lawyer does not, ipso facto, make all communications with that person privileged." *Chen*, 99 F.3d at 1501. The attorney-client privilege does not apply simply because the Attorney General's office is involved.

E.   **The Correspondence is not Protected by the Attorney Work Product Doctrine.**

Neither is the requested correspondence protected from discovery under the attorney work product doctrine. The federal attorney work product doctrine controls in this case. The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *U.S. v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 906 (9th Cir. 2004) (citations omitted). To be protected under the doctrine, a document must have been "created because of anticipated

litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 908. As this Court has noted, "the question of paramount significance in the application of Fed. R. Civ. P. 26(b)(3) [is] whether the material sought was prepared in anticipation of litigation or for trial." *Baker v. CNS Ins. Co.*, 123 F.R.D. 322, 328 (D. Mont. 1988).

The State's attempt to locate the pubic hair in the Barry Beach case is not part of its trial strategy, but is in response to a direct order from the Court. Nor can any argument be made that correspondence reflecting attempts to locate the missing hair that predate the Bromgard litigation is covered by the work product doctrine. Indeed, it appears that the real reason that the State does not wish to locate the hair, or to provide its documented efforts to do so, is because it could potentially reveal that yet another innocent man has spent years in prison due to Melnikoff's gross incompetency or malice.

State Defendants admit they do not wish to produce the evidence in case Barry Beach files a lawsuit after he is exonerated. Defs. Brf. at 6. This fear of future litigation, however, does not magically transform the correspondence reflecting efforts to locate the pubic hair into documents protected by the attorney work product doctrine. This Court has held that "[a] generalized alertness to the possibility of litigation will not suffice to bring material within the purview of the work product doctrine." *Baker*, 123 F.R.D. at 328. The work product doctrine does not apply simply because the Attorney General's Office is involved.

## II. Request for Production No. 32: Mike Wellenstein's Files

Plaintiff has requested Mike Wellenstein's files regarding the Beach case. Plaintiff agrees that this request is overly broad and wishes to narrow the request. Concurrent with the

filing of this response brief, Plaintiff will serve State Defendants the following Amended Request for Production No. 32:

> Please provide any and all copies of correspondence, including e-mails, reflecting efforts to locate the hair slides in Beach, that are, or have been in the possession of Mike Wellenstein.

Amended Request for Production No. 32, attached as Exhibit 7. As amended, the request seeks a subset of the documents requested in RFP No. 31. Mike Wellenstein is an employee of the State and as such, all of his files are subject to the control and possession of the State.

### III. Bromgard will Suffer Prejudice if neither the Pubic Hair nor a Satisfactory Accounting of the Pubic Hair is Produced.

By "losing" the one piece of forensic evidence that tied Beach to the crime, the prejudice suffered upon Beach, who is imprisoned at the Montana State Prison, is without measure. The prejudice to Bromgard's case is also significant. If the actual pubic hair Melnikoff relied on to link Beach to the murder is not produced, Bromgard is denied the ability to have this evidence re-examined by his experts. Furthermore, by failing to produce the correspondence related to efforts to locate the pubic hair, the State Defendants are denying Plaintiff the ability to track down what happened to the missing pubic hair or conclude whether the State made a good faith effort to locate the hair pursuant to this Court's order. In either event, Plaintiff's ability to prove his case will be unduly impaired.

### CONCLUSION

For the reasons stated above, Bromgard respectfully requests the Court to deny the State Defendants' motion for a protective order.

//

DATED the 12th day of February, 2007.

/s/ Ronald F. Waterman
Ronald F. Waterman, Esq.
Julie A. Johnson, Esq.
GOUGH, SHANAHAN, JOHNSON & WATERMAN

Peter J. Neufeld, Esq.
Monica R. Shah, Esq.
COCHRAN NEUFELD & SCHECK, LLP

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the <u>12th</u> day of February, 2007 a copy of the foregoing document was served upon the following persons by the following means:

| | |
|---|---|
| <u>    1, 2, 3    </u> | CM/ECF |
| _____ | U.S. Mail |
| _____ | Hand Delivery |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk, U.S. District Court

2. Shelton C. Williams, Esq.           mike@wmslaw.com
   Susan Moriarity Miltko, Esq.       susan@wmslaw.com
   Williams Law Firm, P.C.
   *Attorneys for Defendants Montana State*

3. Daniel L. Schwarz, Esq.             dschwarz@co.yellowstone.mt.us
   Kevin Gillen, Esq.                       kgillen@co.yellowstone.mt.us
   Mark A. English                         menglish@co.yellowstone.mt.us
   Yellowstone Deputy County Attorneys
   *Attorneys for Defendants Yellowstone County*
   *Bill Kennedy, John Ostlund, Jim Reno*


            /s/ Ronald F. Waterman
            Ronald F. Waterman
            Julie A. Johnson
            GOUGH, SHANAHAN, JOHNSON & WATERMAN
            Attorneys for Plaintiff