WILLIAMS LAW FIRM, P.C.
SHELTON C. WILLIAMS, ESQ.
SUSAN MORIARITY MILTKO, ESQ.
235 E. PINE, P.O. BOX 9440
MISSOULA, MONTANA 59807-9440
mike@wmslaw.com
susan@wmslaw.com
Tel: (406) 721-4350  Fax: (406) 721-6037
*Attorneys for State Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| JIMMY RAY BROMGARD,<br>    Plaintiff,<br><br>-vs-<br><br>STATE OF MONTANA, COUNTY OF YELLOWSTONE, CHAIRMAN BILL KENNEDY, COMMISSIONER JOHN OSTLUND, COMMISSIONER JIM RENO, ARNOLD MELNIKOFF, and MIKE GREELY,<br>    Defendants. | **CAUSE NO. CV 05-32-BLG-RFC-CSO**<br><br>**STATE DEFENDANTS'<br>MEMORANDUM IN SUPPORT OF<br>MOTION FOR EMERGENCY HEARING<br>AND TO ENFORCE PROTECTIVE ORDER,<br>PREVENT PUBLICITY, AND FOR SANCTIONS** |

On June 28, 2005 this Court entered a stipulated order protecting documents produced in this lawsuit from disclosure to any persons not expressly identified in the order. (Stipulated order attached as **Exhibit A**.) The order states:

> 1. Documents produced pursuant to this order, and the contents thereof, shall be used only for the purposes of this action and shall not be disclosed, made available, or disseminated in any manner for any other purpose. This ***includes but is not limited to any quotation, paraphrase, summary, or other description that conveys the confidential contents of the information or documents***.
>
> 2. These documents, and the contents thereof, shall be shown or made available only to the following persons:

    a)    Present counsel of record for the parties to this litigation, and only their employees, associates, paralegals, and secretarial and clerical employees who are actively engaged in connection with the preparation for and trial of this action, or in monitoring such activities.

    b)    Those Parties in this action who have a need to review the information in connection with this action. Counsel for the parties must exercise all reasonable efforts to ensure against disclosure by the parties to any other person.

    c)    To the extent deemed necessary by counsel, party representatives, independent experts, or consultants (including other counsel) and their employees or clerical assistants who are employed, retained, or otherwise consulted by counsel of record or a party for the purpose of analyzing the documents produced, and the contents thereof, conducting studies, or providing opinions to assist in the litigation, provided that each person given access to any of the documents produced, or the contents thereof, must be presented with a copy of this Stipulation and agree in writing to be bound by the terms of the Stipulation, by executing an acknowledgment thereof.

    d)    Court personnel and/or court reporters who are actively involved in this proceeding.

    3.    In the event any of these documents, or the contents thereof, or any document which comprises, contains, reproduces, or paraphrases the documents produced, or the contents thereof, is included in any pleading, brief, or other document filed with the Court, such document shall be filed with instructions to the clerk that, except as otherwise ordered by the Court, such items are to be sealed pursuant to this Stipulation and are not to be disclosed to any person other than the Court and counsel of record.

    4.    In the event that any of these documents, or

the contents thereof, or any document which comprises, contains, reproduces, or paraphrases the documents produced, or the contents thereof, is used in a deposition, or becomes a deposition exhibit, or the testimony of the witness is designated as confidential pursuant to this Stipulation, the reporter shall be instructed that such item and such portion of the deposition testimony designated as confidential shall be bound separately and sealed, and if filed in court, shall be filed with instructions to the clerk as set forth in paragraph 3, and the reporter shall be further instructed not to furnish copies of any such item or testimony, or disclose the information to any person other than counsel of record.

    5.  ***Counsel of record are responsible for employing reasonable measures to control the duplication of, access to, and distribution of confidential information and these documents, and the contents thereof***.

    6.  If testimony pertaining to these documents, and the contents thereof, is to be submitted as proposed findings, counsel for any party may request that a designated portion be treated as confidential and protected from disclosure to persons not parties to this litigation.

    7.  The inadvertent or unintentional production of documents containing or referring to these documents, and the contents thereof, without being designated as Confidential shall not be construed as a waiver in whole or in part of a party's claim of confidentiality.

    8.  Without limiting other remedies that may be available, if these documents, or the contents thereof, are disclosed in violation of this Stipulation, a party who learns of such disclosure, as well as the ***party who was directly or indirectly responsible for such disclosure***, shall immediately inform the other party and ***shall make every effort to ensure no further disclosure occurs***. (Emphasis added.)

On December 9, 2005 the parties filed a stipulated addendum to the June 28, 2005 Confidentiality Order which expanded the

scope of the order to also include all documents produced in discovery by all Defendants. That stipulated Order states:

> Come now the parties and stipulate that, in addition to the documents described in Paragraph 1 through 4 on page 1 and 2 of the stipulated order, ***all documents produced in discovery by all Defendants shall also be subject to all terms and conditions*** of paragraphs 1 through 10 on pages 2 through 6 of the stipulated order. (Emphasis added.)

(Stipulated Addendum attached hereto as **Exhibit B.**)

On March 27, 2007 at the beginning of Plaintiff's deposition of Defendants' statistics expert, Dr. Brian Steele, Mr. Neufeld notified Professor Steele that he intended to share "these transcripts" with a man doing an article for *CHANCE* magazine. (March 27, 2007 Deposition of Dr. Steele, pp. 6-7 attached as **Exhibit C.**) Counsel for State Defendants expressed concerns relating to the potential release of depositions to third parties in violation of the protective order. (Williams letter of March 30, 2007 to Waterman and Neufeld attached as **Exhibit D**, p. 1.) Mr. Waterman responded that the limited release of Dr. Steele's and Dr. Kayll's depositions to *CHANCE* magazine would not violate the order or generate undue publicity in Montana. (Waterman April 4, 2007 letter to Williams attached as Exhibit D, pp. 2-3.)[1] Plaintiff's attorneys did **not** disclose

---

[1] Mr. Waterman refers to a letter of February 28, 2007 from Williams to Waterman with a request from Arnold Melnikoff to provide the expert **reports** from Drs. Kayll and Steele to his Washington attorneys to use in Mr. Melnikoff's Washington litigation. **Exhibit D**, p.4. Plaintiff did not object to that limited disclosure.

any plans to provide deposition transcripts of Mike McGrath, John Conner and Julie Long to the Chicago Tribune.

Six weeks later, on May 17, 2007, Lynn Solomon, Public Information Officer for the Montana Department of Justice, received an e-mail from Maurice Possley, a reporter for the Chicago Tribune. In that e-mail, Possley disclosed his intention to publish an article relating to Attorney General Mike McGrath's deposition in the Bromgard civil suit. In his e-mail, he summarized the content of the article. The threatened article is inflammatory and grossly mischaracterizes McGrath's testimony:

> The story will note Mr. McGrath's belief that Bromgard is guilty. It will lay out his theories as to what happened – including that the victim had an active sex life, that her sister had an active sex life, that the victim's parents had sex on their child's bed, that the father masturbated on his daughter's underwear or that the father had an incestual relationship with the victim.

(May 17, 2007 e-mails between Possley and Solomon attached as **Exhibit E**, pp. 1-2.) Lynn Solomon asked Mr. Possley if Mr. Neufeld *also* gave him copies of the depositions of Julie Long and John Connor. (Exhibit E, p. 3.) Possley responded that he had also read Ms. Long's deposition and an excerpt of Connor's deposition. (Exhibit E, p. 4.) It appears that counsel for Plaintiff provided copies of depositions from this case to the media.[2] The Chicago Times web page establishes that Mr. Possley

---

[2] Possley neither confirmed or denied that he received the depositions from Peter Neufeld. See **Exhibit E**, p. 4*.* However, Mr. Possley has a history of communication/interviews with the

has a longstanding relationship with the Innocence Project. He has numerous bylines regarding the use of DNA in criminal cases, and has referenced the Innocence Project repeatedly.[3] (Printout of Chicago Tribune summary of Possley bylines and supporting articles attached as **Exhibit F**, pp. 3-11.) Plaintiff's attorneys, Peter Neufeld and Barry Scheck, are the Co-Directors and founders of the Innocence Project. (Innocence Project web page attached as **Exhibit G**, p. 1.) Immediately upon learning of the probable breach of the Protective Order, Defendants notified Plaintiff's attorneys of their concerns and requested information from them regarding the release of protected information. (Williams letter to Waterman and Neufeld of May 18, 2007 attached as Exhibit D, pp. 5-6.) They have not responded.

The depositions of Mike McGrath, Julie Long, John Connor and Lori Hutchinson discuss exhibits that are protected by the Order. (Index of Exhibits to the Depositions attached as **Exhibit H**, p. 2.) Julie Long testified about lab documents, proficiency files, internal e-mails and her notes, all documents produced in

---

Innocence Project. **See Exhibit F**, pp. 8, 10. The only individuals who should have access to these depositions are the parties to this case, or the classes of people identified in the confidentiality order. The only party who would profit from the release of this information is the Plaintiff.

[3] The October 21, 2004 Possley Chicago Tribune article, **Exhibit N,** cites Barry Scheck, founder of the Innocence Project, stating, "Virtually every major lab scandal has been broken by a post-conviction DNA exoneration." The August 26, 2004 Possley Chicago Tribune article, **Exhibit O,** quotes Peter Neufeld, an attorney with the Innocence Project, who said McGrath was in "cover-up mode" because "he relied upon Melnikoff when he was a prosecutor. Given the run of crime lab scandals in this country, McGrath stands virtually alone in his unwillingness to examine the evidence."

discovery by the Defendants.[4] John Connor testified about internal e-mails, memorandum and spreadsheets, also produced by Defendants.[5] The release of the depositions by a party or his attorneys to the Chicago Tribune would be a direct violation of the Protective Order. The Chicago Tribune has a circulation of 1.7 million weekdays and 2.7 million on Sundays. (Chicago Tribune web page attached as Exhibit F, pp. 1-2.) The story will probably be republished in newspapers around the country. The pool from which the jury in this case will be chosen will be exposed to and contaminated by it. Furthermore, the content of the article and the manner in which it is presented will damage the reputations of and embarrass the victim's family.

Disclosure of this material by an attorney in this case would also be a violation of Rule 3.6, Montana Rules of Professional Conduct, by this conduct. Rule 3.6 states:

> A lawyer who is participating in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Dissemination of this information to a newspaper such as the

---

[4] Excerpts from Julie Long's deposition are attached as **Exhibit I**, pp. 1-9, and include discussions of confidential documents produced by the State Defendants, pp. 26-29; laboratory procedures, pp. 64-69; proficiency files, pp. 85-88; internal e-mails from Long to McGrath re the Melnikoff case, pp. 107-110; and pp. 139-140, notes taken by Long for the science advisory board.

[5] Excerpts of John Connor's Deposition are attached as **Exhibit J**, pp. 1-8. E-mails from Hutchinson to Connor, pp. 20-21; E-mails between Connor and Long, pp.40-42; Memo from Connor to McGrath and Forensic Science Advisory Council, pp. 89-91; and Spreadsheet of Melnikoff cases, pp. 109-112.

Chicago Tribune, carries a high probability of materially prejudicing the jury pool. The disclosure seems intended to deprive the State Defendants of their right to a fair trial.

This issue has arisen before. State Defendants have repeatedly requested Plaintiff to stop releasing information to the media. Plaintiff has agreed to "not make any further statements which detail the manner in which the State Crime Lab and Mr. Melnikoff conducted its investigation in this matter nor will we make any further statements which refer to matters which are contained in non-public records in this matter or in any earlier proceeding involving our client." (Waterman February 14, 2005 letter to Williams attached as Exhibit D, p. 7.) Plaintiff stated, "We have no interest in trying this case in the press." Id. Mr. Waterman specifically represented that he and his co-counsel, Mr. Neufeld, would comply with the provisions of Rule 3.6. (March 1, 2005 correspondence from Waterman to Williams [Exhibit D, pp. 9-10]. See also Williams letter of January 24, 2005 to Waterman [Exhibit D, pp. 11-12], and Williams letter of February 18, 2005 to Waterman [Exhibit D, pp. 13-14].)

Material relevant to this case has appeared in national and Montana publications, as well as popular television productions from CNN and Court TV. Court TV or its producer has a contract with the Innocence Project for a seven program series on Innocence Project cases. Plaintiff has refused to produce a copy

of that contract. (Plaintiff's response to State Defendants' Request for Production No. 20 [**Exhibit K**, pp. 1-2]. See also Solomon e-mail [Exhibit **K**, pp. 3-4].) Court TV ran an hour long program on Jimmy Ray Bromgard in January, 2006. The Innocence Project web page lists Court TV as recommended viewing. (Innocence Project web page attached as Exhibit G, pp. 1-4.) CNN Presents aired a program on "Reasonable Doubt: Can Crime Labs Be Trusted?" in which it discussed Arnold Melnikoff, among others, and "what types of 'mistakes' (were) made by these and other forensic experts." (CNN Presents web page attached as **Exhibit L**, p. 1-5.) In CNN Presents' January 9, 2005 television program, Mr. Neufeld was critical of the crime lab and the State. (CNN Presents transcript attached as Exhibit L, pp. 6-18.)

The Seattle Post Intelligencer published an article on October 11, 2002 in which it cited Peter Neufeld as saying "There's absolutely no question that this guy was engaging in scientific fraud." (Speaking of Arnold Melnikoff) (Seattle Post Intelligencer article attached as **Exhibit M**, pp. 1-4.) Peter Neufeld has been quoted by Possley in a Chicago Tribune article saying that McGrath is engaging in a cover-up. (See Exhibit O, p. 2.)

State Defendants have warned Plaintiff that this continuing barrage of publicity, much of which has been generated by Plaintiff's attorneys and by the Innocence Project, which they

control, would make it difficult to select an unbiased jury. (Williams correspondence of January 25, 2005 to Waterman and Neufeld [Exhibit D, pp. 11-12], and Williams correspondence of February 18, 2005 to Waterman [Exhibit D, pp. 13-14]. See also Waterman responses dated February 14, 2005 [Exhibit D, pp. 7-8] and March 1, 2005 [Exhibit D, pp. 9-10].)

Plaintiff's attorneys have apparently breached their promises to comply with the rules of professional conduct and the Court's protective order. Despite their promises and the Protective Order, the media barrage continues. It has become necessary for the Court to intervene and, to the extent possible, protect the jury pool from further exposure to leaks of protected information and biased media attacks including inflammatory statements by Mr. Neufeld.[6] If Plaintiff's attorneys released the McGrath, Long and Connor depositions to the Chicago Tribune their conduct is not only a violation of an agreement between the parties, but also a direct and intentional violation of this Court's order of confidentiality.

### RELIEF REQUESTED

State Defendants request that the Court:

1. Schedule an emergency hearing on this motion.

2. Order Plaintiff and his attorneys to inform the Court and

---

[6] State Defendants assert that it is no longer possible to seat a jury that is unbiased given the extensive media campaign of the Innocence Project.

counsel as to the extent of their involvement in disclosing potentially protected confidential information to the media, including: identification of depositions and other confidential documents and information disclosed, dates of and their reason for each disclosure, and identification of the individuals and entities to whom each disclosure was made. Plaintiff's attorneys should also be required to disclose each contact they have had with representatives of the media, since they were hired to represent Plaintiff on February 20, 2004, regarding Jimmy Ray Bromgard, the crime he allegedly committed, his prosecution, trial, exoneration and the issues raised in this case; and, for each such contact, to identify the media representative, the person who initiated the contact, the date of contact and the subjects discussed; and, to produce all documents (e-mails, letters, telephone call records, depositions, exhibits) which were provided to the media representative and the resulting media report, article or broadcast in which the information was used.

    3. Order all parties, their attorneys and representatives and the Innocence Project to cease and desist from further contact with the national or local media, or any other publication or media source whatsoever, regarding any issue raised in this case, including this motion, until the termination of this case, including the duration of any post-

trial proceedings in regard to any relief that may be sought.

4.  If the Court finds that any of Plaintiff's attorneys have violated the Protective Order, that attorney and his firm should be barred from further participation in this suit; and, if appropriate, his *pro hac vice* admission to Montana Federal District Court should be revoked.

5.  Order Plaintiff or his attorneys to reimburse State Defendants for any and all costs and fees related to this motion.

6.  Order any other relief that the Court deems proper to eliminate or minimize the effect this pretrial publicity has on the jury pool in this case, such as jury instructions, blanket challenges for cause for any potential juror that has had access to this information through the media, and/or dismissal of any or all of Plaintiff's claims presented in this action.

DATED this   24TH   day of MAY, 2007.

                                        /s/ Shelton C. Williams
                            Shelton C. Williams, Esq.
                            WILLIAMS LAW FIRM, P.C.
                            Attorneys for State Defendants