IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| JIMMY RAY BROMGARD,<br><br>              Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA, COUNTY OF<br>YELLOWSTONE, CHAIRMAN BILL<br>KENNEDY, COMMISSIONER JOHN<br>OSTLUND, COMMISSIONER JIM<br>RENO, ARNOLD MELNIKOFF, and<br>MIKE GREELY,<br><br>              Defendants. | CV-05-32-BLG-RFC-CSO<br><br>**ORDER MODIFYING ADDENDUM<br>TO STIPULATED PROTECTIVE<br>ORDER** |

The parties and Intervenor *The Billings Gazette* (the "*Gazette*") have asked the Court to resolve whether the stipulated protective order (Court's Doc. No. 54) and its addendum (Court's Doc. No. 75) should be modified and, if so, to what extent.  At issue is whether documents that fall under the stipulated protective order and its addendum may be disseminated to individuals or entities not parties to this litigation.

Having reviewed the record, together with the parties' and the *Gazette*'s arguments in support of their respective positions,

the Court is prepared to rule.

## I.   ***BACKGROUND***

On June 28, 2005, Magistrate Judge Anderson, to whom this case previously was referred (see Court's Doc. No. 34), approved the parties' stipulation for entry of an order compelling the custodians of certain criminal justice records to produce them. *Stipulated Order Compelling Production of Records* (Court's Doc. No. 54) ("the Protective Order"). The Protective Order included provisions requiring the parties to refrain from disseminating the produced documents to individuals or entities who are not parties to the case.

On December 14, 2005, Judge Anderson approved the parties' addendum to the Protective Order. *Stipulated Addendum to the June 28, 2005 Confidentiality Order* (Court's Doc. No. 75) ("the Addendum"). The Addendum expanded the scope of documents that the parties were not to disseminate to parties outside of the litigation to include "all documents produced in discovery by all Defendants[.]"

On May 24, 2007, Defendants the State of Montana, Mike Greely, and Arnold Melnikoff ("State Defendants") moved, *inter alia*, to enforce the Protective Order[1] to prevent "Plaintiff, his legal counsel, and the Innocence Project from releasing any

---

[1]The Court hereafter refers to the Protective Order and its Addendum collectively as "the Protective Order."

information regarding this lawsuit to any individual or entity
not specifically identified" in the Protective Order.  *State
Defendants' Mtn. for Emergency Hearing and to Enforce Protective
Order, Prevent Publicity, and for Sanctions* (Court's Doc. No.
169).

On June 4, 2007, the *Gazette* moved to intervene.  Court's
Doc. No. 180.  On June 6, 2007, the Court granted the *Gazette's*
motion to intervene.  Court's Doc. No. 186.

On June 11, 2007, the Court held a hearing on the State
Defendants' motion to enforce the Protective Order.  Court's Doc.
No. 194.  Subsequently, the Court ordered the parties to
participate in negotiations to "attempt to reach agreement with
respect to what documents should remain subject to the protective
order and what documents should not remain subject to the
protective order."  Court's Doc. No. 195.  The Court also
directed that "[a]ny document about which counsel are unable to
agree may be presented to the Court in an appropriate motion
seeking resolution of the dispute."  *Id*.

The parties and the *Gazette* attempted to agree with respect
to the reach of the Protective Order.  While the parties were
able to agree "that certain documents are not protected and must
be produced[,]" they were "unable to reach agreement on the vast
majority of the documents or who should bear the costs of
redaction and production."  *Stipulated Briefing and <u>In Camera</u>*

-3-

*Inspection Order* (Court's Doc. No. 216) *at 2*.  Consequently, the parties and the *Gazette* proposed a procedure to place before the Court the pertinent issues and arguments with respect to the Protective Order and Addendum.  *Id*.  The Court approved the procedure.  *Id. at 3-4*.

The parties and the *Gazette* have filed their briefs, and the parties have submitted for *in camera* review sample documents to illustrate their arguments.

## II.   *SUMMARY OF THE PARTIES' ARGUMENTS*

### A.   *The State Defendants*

The State Defendants first argue that Bromgard is precluded by the doctrine of judicial estoppel from arguing now that documents originally subject to the Protective Order may be disseminated to non-parties.  *State Defendants' Brief to the Court on Motion to Amend Protective Order* (Court's Doc. No. 219) *at 3-5*.  The State Defendants argue that Bromgard has pursued multiple motions to compel production of documents and has relied upon the protection afforded by the Protective Order in advancing his position.  Judge Anderson agreed that the Protective Order afforded adequate assurances of confidentiality with respect to the requested documents, the State Defendants argue, and ordered the production of a variety of documents based on that protection.  Bromgard must be prevented, the State Defendants argue, from now taking the position that the documents are no

longer protected from dissemination.  *Id*.

Second, the State Defendants have advanced seven bases that they argue amount to "good cause" for protecting litigation materials and information.  The seven bases are:

1.  Litigation materials are not public and dissemination should not be compelled.

2.  The materials contain information that is protected by the right to privacy of parties, witnesses, victims, criminal defendants and others.

3.  The materials contain information which may be inadmissible at trial and should not be published to the jury venire from which the jury will be selected in this case.

4.  The depositions and discovery responses contain commentary and testimony by Plaintiff's counsel which is inflammatory or argumentative, the release of which would be prejudicial to the parties and deprive them of the right to a fair trial.

5.  The documents and depositions contain information that is protected by the Montana Criminal Justice Information Act ["MCJIA"] and must not be disclosed.

6.  The production of the discovery materials in this case would be unduly burdensome, costly, and distracting.  The necessary redactions would be unduly burdensome, expensive, and sufficiently time consuming to interfere with the parties' ability to effectively pursue this case.

7.  The documents contain attorney work product and mental impressions which should not be released to the public.

*Id. at 5*.

The State Defendants have identified 14 categories of

documents that they argue warrant protection based one or more of the seven bases listed above. *Id. at 13-17.* The 14 categories are as follows:

1. All depositions;
2. The State Defendants' discovery responses;
3. Bromgard's discovery responses;
4. The Yellowstone County Defendants' discovery responses;
5. Crime lab files produced in discovery;
6. Attorney General's memos/notes;
7. Attorney notes already determined to be privileged by Court's order dated May 2, 2006;
8. Records secured through subpoena or court order;
9. Melnikoff's lab books;
10. Transcripts and pleadings from criminal cases gathered in the AG's investigation of Melnikoff;
11. Spreadsheet regarding State's search for evidence;
12. Miscellaneous material regarding the crime lab;
13. Expert files; and
14. Deposition exhibits.

*Id. at 14-17.*

Finally, the State Defendants argue in conjunction with Basis 6 above that if the Court permits dissemination of any documents, the fees and costs associated with the review and redaction of protected information should be assessed to the person or entity who requests the documents. *Id. at 11-12, 17.*

### B. *Plaintiff Jimmy Ray Bromgard*

Bromgard argues in response that the "State Defendants have cast their net excessively broad by asking the Court to seal nearly every document related to this litigation ... many of which are public documents." *Plaintiff's Response Brief Opposing State Defendants' Brief on Motion to Amend Protective Order*

(Court's Doc. No. 218) ("*Bromgard's Resp.*") *at 1-2*.

Specifically, Bromgard argues that:

(1)  the State Defendants have failed to apply the "compelling interests" standard that applies to documents attached to dispositive motions and have not supported their reasons for protecting documents by providing specific factual findings, *id. at 2-3*;

(2) judicial estoppel does not prevent him from challenging the "blanket" protective order previously entered, *id. at 3-5*;

(3) the existing protective order does not satisfy the "good cause" requirement of Rule 26(c),[2] *id. at 6-7*;

(4) the State Defendants' seven bases for protecting the documents and information do not meet the "good cause" standard, *id. at 8-16*; and

(5) the documents that the State Defendants submitted *in camera* do not evidence "good cause" for being protected, *id. at 16-20*.

Bromgard also argues that a select number of documents should remain subject to the Protective Order.  *Plaintiff's Brief in Support of Modification of Protective Order* (Court's Doc. No. 218) ("*Bromgard's Br.*") *at 3*.  Specifically, Bromgard argues that good cause exists under Rule 26(c) to prohibit public dissemination of the following sets of documents:

1.    Bromgard's juvenile records;

2.    Bromgard's jail and prison records;

3.    City of Billings criminal investigation files for the crime for which Bromgard was convicted on November 19, 1987; and

---

[2]All references to rules herein are to the Federal Rules of Civil Procedure unless otherwise indicated.

> 4.    Yellowstone County criminal investigation files
>       for the crime for which Bromgard was convicted on
>       November 19, 1987.

*Id. at 3.*

Finally, Bromgard argues that "good cause" exists under Rule 26(c) to protect his psychological and medical records and other documents that contain such information. *Id. at 4-6.* Bromgard acknowledges that, "[t]o the extent that these records become evidence at trial, [Bromgard] concurs that good cause may no longer exist [to keep this information confidential]." *Id. at 6.*

## C.   *The Yellowstone County Defendants*

Defendants Yellowstone County, Bill Kennedy, John Ostlund, and Jim Reno ("the Yellowstone County Defendants") do "not object to the dissemination of any depositions or documents produced in discovery by or in relation to the County." *Yellowstone County's Brief Regarding Proposed Designation of Confidential Documents* (Court's Doc. No. 217) ("*Yellowstone Co.'s Br.*") *at 1.* They argue that "[t]he only privacy interest the County desires to continue to protect is that of the victim and her family." *Id.* The Yellowstone County Defendants also state that they do not object to the dissemination of any documents containing the identities of the victim or her family provided the names of the victim and her family are redacted. *Id.*

-8-

### D.   *The Billings Gazette*

The *Gazette* argues that it has two interests for consideration by the Court.  *The Billings Gazette's Brief in Opposition to State Defendants' Proposed Protective Order* (Court's Doc. No. 222) (the "*Gazette's Br.*") *at 2*.  First, the *Gazette* "seeks disclosure of depositions of key former or present public employees, experts (other than medical experts), and [Bromgard]." *Id*.  Second, the *Gazette* "seeks to hold the parties to their burden of establishing good cause to support a protective order pursuant to Rule 16 [sic]." *Id*.

With respect to its interest in holding the parties to their burden, the *Gazette* first argues that the State Defendants have failed to establish good cause to support the Protective Order. *Id. at 3-4*.  It argues that because the Protective Order was entered pursuant to stipulation, the State Defendants, who seek continued protection under the order, carry the burden of proof to establish good cause for the order.  *Id*.  The *Gazette* argues that the State Defendants have not met their burden with respect to any documents.  *Id. at 4*.

Second, the *Gazette* argues that the State Defendants' reliance on <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1984), for the proposition that there exists no federal or common law right of access to discovery material is misplaced.  The *Gazette* argues that Montana's Constitution, statutes, and case law "have

-9-

long recognized a right of public access to all documents held or generated by a governmental entity ... [and because] the discovery documents are held or generated by the State, ... [they] are therefore available to all citizens of this State, absent a showing that the merit of public disclosure is clearly exceeded by individual privacy rights." *Id.* Here, the *Gazette* argues, the State Defendants have not made the requisite showing to prevent public disclosure. *Id. at 4-6.*

Third, the *Gazette* argues that the State Defendants have exaggerated the risk of danger to the privacy interests of others in advocating for protection of information from dissemination. *Id. at 6-7.* The *Gazette* notes that such information can be protected through redaction, and agrees to the redaction of information that would identify victims and non-employee witnesses in documents. *Id. at 7.*

Fourth, the *Gazette* argues that the MCJIA does not justify a protective order because, under the circumstances of this case, the public's right to know exceeds the rights of privacy established by the MCJIA. *Id. at 8.* For example, the *Gazette* argues, Bromgard does not have a reasonable expectation of privacy in the investigative files that outweighs the public's right to know in this case in light of the strong interest the public has in whether Bromgard's unfair or wrongful conviction and imprisonment will result in a tort award. *Id. at 9-10.*

-10-

Fifth, the *Gazette* argues that, contrary to the State Defendants' position, whether evidence is eventually deemed inadmissible at trial has no bearing on the reach of the Protective Order. *Id. at 10-11.*

Sixth, the *Gazette* argues that production of discovery materials is not unduly burdensome, costly, and distracting. *Id. at 11.* The *Gazette* argues that it is seeking only production of some of the depositions in this case, and that these could be produced inexpensively through either electronic means or by simple copying. *Id.*

Seventh, the *Gazette* argues that the State Defendants have not established that fair trial concerns justify a protective order. *Id. at 12.* It argues that deprivation of the right to a fair trial must be proven and cannot merely be implied. Also, the *Gazette* argues that the State Defendants have not shown that all other methods of protecting a fair trial, such as intense voir dire or relocating the trial cannot succeed. *Id. at 12-13.*

Eighth, the *Gazette* argues that any privileges that the State Defendants rely upon in arguing for a protective order were waived upon production of any document to a third party. *Id. at 13.*

Ninth, the *Gazette* argues that attorney commentary within depositions and discovery responses produced during discovery should not be subject to a protective order unless they contain

-11-

information that is confidential based on the MCJIA or HIPAA.
*Id. at 13-14.*

Finally, the *Gazette* argues that the State Defendants have
failed to meet their burden of establishing that specific
categories of documents should be subject to a protective order.
*Id. at 14-18.*

### III.  <u>DISCUSSION</u>

#### A.  <u>Judicial Estoppel Does Not Preclude Modification of the Protective Order</u>

As an initial matter, the Court concludes that the doctrine
of judicial estoppel does not preclude modification of the
Protective Order previously entered by Magistrate Judge Anderson.
Three reasons support the Court's conclusion.

First, in the Ninth Circuit the public is permitted "access
to litigation documents and information produced during discovery
unless the party opposing disclosure shows 'good cause' why a
protective order is necessary." <u>Phillips v. General Motors
Corp.</u>, 307 F.3d 1206, 1210 (9th Cir. 2002) ("It is well-
established that the fruits of pre-trial discovery are, in the
absence of a court order to the contrary, presumptively public.
Rule 26(c) authorizes a district court to override this
presumption where 'good cause' is shown."  (quoting <u>San Jose
Mercury News, Inc. v. United States Dist. Ct.</u>, 187 F.3d 1096,
1103 (9th Cir. 1999))).  "A party who has never made a 'good
cause' showing under Rule 26(c) justifying initial protection of

disputed documents may not rely solely on the protective order to justify refusal when there is a reasonable request for disclosure." <u>Contratto v. Ethicon, Inc.</u>, 227 F.R.D. 304, 308 (N.D. Cal. 2005) (quoting <u>Verizon California, Inc. v. Ronald A. Katz Tech. Licensing, L.P.</u>, 214 F.R.D. 583, 586 (C.D. Cal. 2003)(citations omitted)).

Here, as noted *supra*, the parties previously entered stipulations to keep certain information confidential.  Rather than showing "good cause," however, they simply stipulated that good cause existed, submitted their stipulations to the Court, and Judge Anderson entered Orders with respect to the stipulations.  <u>See</u> Court's Doc. Nos. 54 and 75.  Because "good cause" for the Protective Order has never been demonstrated, modification of the Protective Order is not precluded by judicial estoppel.  <u>Phillips</u>, 307 F.3d at 1210.

Second, the Ninth Circuit has permitted parties to a protective order to seek its modification to increase or decrease the level of protection afforded, or to vacate the order altogether.  "A party subject to a protective order is generally free to return to the issuing court to seek modification of the order."  <u>Osband v. Woodford</u>, 290 F.3d 1036, 1039 (9th Cir. 2002) (citing <u>Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us</u>, 62 F.3d 1217, 1219 (9th Cir. 1995)).

Third, the Ninth Circuit has held that where, as here, a

non-party seeks modification of a protective order, the party
opposing modification bears the burden of showing "good cause"
for continuing the protection.  Phillips, 307 F.3d at 1211, n.1
(citing Beckman Industries, Inc. v. International Ins. Co., 966
F.2d 470, 475 (9th Cir. 1992) (rejecting argument that
intervenors need to show "extraordinary circumstances" to have
court modify protective order and explaining that party seeking
protection bears burden of proof where protective order was
stipulated and no party previously had made showing of "good
cause")).  Again, because no party previously has shown "good
cause" for a protective order, modification of the Protective
Order is not precluded.

     For the reasons stated above, the Court concludes that the
doctrine of judicial estoppel does not preclude modification of
the Protective Order previously entered.

     **B.   *Access to Documents and Information***

     Rule 26(c) allows a court, for "good cause shown," to make
any order that justice requires to protect a party or person from
annoyance, embarrassment, oppression, or undue burden or expense.
Trial courts have broad discretion in determining what
constitutes good cause, whether good cause exists, and, if it
does exist, what protection is appropriate.  Seattle Times, 467
U.S. at 36 ("broad discretion [is conferred] on the trial court
to decide when a protective order is appropriate and what degree

-14-

of protection is required"); <u>Flatow v. Islamic Republic of Iran</u>, 308 F.3d 1065, 1074 (9th Cir. 2002) (noting trial court has "extensive control" over discovery process); <u>Phillips v. General Motors Corp.</u>, 307 F.3d at 1211.

As noted, the State Defendants have identified 14 categories of documents that they believe warrant protection from dissemination.  They assert as "good cause" for protection of each category one or more of the seven bases that they have listed.  The State Defendants, as the parties opposing modification of the protective order, bear the burden of showing "good cause" for continuing the protection.  <u>Phillips</u>, 307 F.3d at 1211, n.1 (citing <u>Beckman Industries</u>, 966 F.2d at 475).

In addressing the parties' arguments, the Court notes at the outset that it must engage in separate analyses in addressing the right of access to documents and information.  The analysis that applies depends upon the status of the information sought to be protected.  <u>Foltz v. State Farm Mut. Automobile Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir. 2003).

First, the Ninth Circuit has determined that, where access to unfiled discovery documents is at issue, the

> party asserting good cause bears the burden, for each
> particular document it seeks to protect, of showing
> that specific prejudice or harm will result if no
> protective order is granted.  <u>Phillips</u>, 307 F.3d at
> 1210-11 (citing <u>San Jose Mercury News</u>, 187 F.3d at
> 1102); <u>see</u> <u>also</u> <u>Beckman</u>, 966 F.2d at 476 ("[B]road
> allegations of harm, unsubstantiated by specific
> examples or articulated reasoning, do not satisfy the

Rule 26(c) test.") (quoting <u>Cipollone v. Liggett Group,</u> <u>Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986) (internal quotation marks omitted)); <u>Deford v. Schmid Prods. Co.,</u> 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

<u>Foltz</u>, 331 F.3d at 1130-31.

Second, the Ninth Circuit has determined that, where access to judicial records is at issue, there exists a "general right to inspect and copy public records and documents, including judicial records and documents." <u>Kamakana v. City and County of Honolulu</u>, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting <u>Nixon v. Warner</u> <u>Communications, Inc.</u>, 435 U.S. 589, 597 & n.7 (1978)). This right derives from citizens' interest in monitoring the workings of government agencies and is "aided by the efforts of newspapers to 'publish information concerning the operation of government.'" <u>Id</u>. (citations omitted).

Only two types of documents – grand jury transcripts and warrant materials in the midst of a pre-indictment investigation – do not fall within this general rule because they are documents that have "traditionally been kept secret for important policy reasons." <u>Id</u>. Thus, "[u]nless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." <u>Id</u>. (quoting <u>Foltz</u>, 331 F.3d at 1135).

To overcome this "strong presumption" favoring access, a

party seeking to seal a judicial record must meet the "compelling reasons" standard.  Id.  This standard requires the party to "articulate[] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" Id. at 1178-79 (citations omitted).

With respect to the next step in the analysis, the Ninth Circuit has noted:

> In turn, the court must "conscientiously balance[ ] the competing interests" of the public and the party who seeks to keep certain judicial records secret.  Foltz, 331 F.3d at 1135.  After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."  Hagestad [v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995)](citing Valley Broadcasting Co. v. U.S. Dist. Ct., 798 F.2d 1289, 1295 (9th Cir. 1986)).
> In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.  Nixon, 435 U.S. at 598, 98 S.Ct. 1306; accord Valley Broadcasting Co., 798 F.2d at 1294.  The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.  Foltz, 331 F.3d at 1136.

Id. at 1179.

With respect to specific types of judicial records, the strong presumption of access attaches to dispositive motions,

including those for summary judgment, and related attachments.
Id. The reason for open access is "because the resolution of a
dispute on the merits, whether by trial or summary judgment, is
at the heart of the interest in ensuring the 'public's
understanding of the judicial process and of significant public
events.'" Id. (quoting Valley Broadcasting [Co. v. U.S. Dist.
Ct.], 798 F.2d [1289,] 1294 [(9th Cir. 1986)] and citing Foltz,
331 F.3d at 1135-36 (noting that "'summary judgment adjudicates
substantive rights and serves as a substitute for trial'") (other
citation omitted)). Thus, to seal judicial records attached to
dispositive motions, the party seeking the seal must show
"compelling reasons." Id.[3]

Finally, the Ninth Circuit has instructed that a showing of
"good cause" is not equivalent to a showing of "compelling
reasons." Id. at 1180. The court has noted:

> A "good cause" showing will not, without more, satisfy
> a "compelling reasons" test. See Foltz, 331 F.3d at
> 1135-36; Phillips, 307 F.3d at 1212 (observing that
> even if a court finds "good cause" under Rule 26(c) to
> seal a document, it must still determine whether the

_____

[3]The Ninth Circuit, however, has "carved out an exception to the
presumption of access" to judicial records for a "sealed discovery
document [attached] to a non-dispositive motion" in that "the usual
presumption of the public's right of access is rebutted." Id. (citing
Phillips, 307 F.3d 1213)(citations and emphasis omitted). The court
has noted that there is a distinction between attachments to
dispositive motions and to non-dispositive motions, the latter
documents often being  "unrelated or only tangentially related[] to
the underlying cause of action." Id. (citations omitted). In this
case, this exception does not appear to be applicable at this time
because, as already noted, the Protective Order previously filed was
not entered upon a showing of good cause.

common law right of access compels production).
Different interests are at stake with the right of
access than with Rule 26(c); with the former, the
private interests of the litigants are not the only
weights on the scale.  Unlike private materials
unearthed during discovery, judicial records are public
documents almost by definition, and the public is
entitled to access by default.  <u>See</u> <u>Nixon</u>, 435 U.S. at
597, 98 S.Ct. 1306.  This fact sharply tips the balance
in favor of production when a document, formerly sealed
for good cause under Rule 26(c), becomes part of a
judicial record.  Thus a "good cause" showing alone
will not suffice to fulfill the "compelling reasons"
standard that a party must meet to rebut the
presumption of access to dispositive pleadings and
attachments.

<u>Id</u>.

It is within the foregoing analytical framework that the
Court examines the documents and information at issue herein.
First, the Court considers documents and information to which the
"compelling reasons" standard applies.  Second, the court
considers documents and information to which the "good cause"
standard applies.

### 1.  *Judicial Records Filed With the Court - the "Compelling Reasons" Standard*

In the course of refining their arguments during the
briefing phase of the instant dispute, the parties now agree that
documents filed with the Court, even those to which the
Protective Order previously applied that were filed as
attachments to motions, are subject to a presumptive right of
public access.  <u>See</u> *State Defendants' Response Brief Per Order
(Document 216) on Motion to Amend Protective Order* (Court's Doc.

No. 221) ("*State Defts' Resp. Br.*") *at 2* ("Judicial records filed
with a court are subject to a presumptive right of public
access"); *State Defendants' Reply to Plaintiff's Brief on Motion
to Amend Protective Order* (Court's Doc. No. 226) *at 2* ("State
Defendants do not contend that the portions of documents or
depositions already submitted to the Court as attachments to
motions still qualify as protected documents").

The Court agrees. <u>Kamakana</u> is clear. "'[C]ompelling
reasons' must be shown to seal judicial records attached to a
dispositive motion. The 'compelling reasons' standard is invoked
even if the dispositive motion, or its attachments, were
previously filed under seal or protective order." <u>Kamakana</u>, 447
F.3d at 1179 (citing <u>Foltz</u>, 331 F.3d at 1136).

Here, as the State Defendants acknowledge, some documents
filed as attachments to motions were not filed under seal or for
*in camera* use only. The strong presumption of public access
applies to such documents, and they are not protected from public
disclosure. No party has shown "compelling reasons" that
overcome the presumption with respect to those documents already
filed as attachments to motions. Thus, such documents are now
part of the court record and are not precluded from public
access.

With respect to future filings, the parties are advised
that, in accordance with the authority cited herein, the party

-20-

seeking protection of documents filed in support of dispositive motions must offer "compelling reasons" to seal the documents. At this point, in the absence of more information with respect to particular documents that may be filed, the Court cannot determine whether future attachments warrant protection.  All information for which "good cause" to protect is found below must be redacted from any exhibits filed with dispositive motions.  If any motion for relief from this order is filed or other request for dissemination is made, the party who wishes to protect the information must show a "compelling reason" to continue to hold it confidential.

### 2. *Discovery Documents and Documents Attached to Non-Dispositive Motions – the "Good Cause" Standard*

The parties and the *Gazette* disagree about whether public dissemination is appropriate with respect to a vast array of documents and information.  All agree, however, that certain types of information ought to be withheld from the public. Specifically, Bromgard, the State Defendants, and the *Gazette* agree that Bromgard's juvenile, jail, and prison records should not be subject to public dissemination.

As "good cause" for protecting this information, the parties note that the documents contain confidential criminal justice information under the MCJIA.  *Bromgard's Br. at 3*; *State Defts' Resp. Br. at 1, 3*; *Gazette's Br. at 1-2*; see also Mont. Code Ann. §§ 44-5-101 et seq.  The Court agrees.  "Good cause" exists to

protect from public dissemination Bromgard's juvenile records and
his jail and prison records.  Protection of such information is
warranted to prevent harassment, embarrassment, annoyance, and
other harm.

The Court also understands that the parties essentially
agree that private information contained within these and all
other documents at issue herein, such as the names of criminal
suspects, victims of crimes, non-government employee witnesses,
and other identifying information, such as Social Security
numbers, telephone numbers, addresses, photographs and
fingerprints, and medical and psychological information about
Bromgard or others, ought to be protected from public
dissemination.  See, e.g., *Gazette's Br. at 14*.  The Court agrees
that such information warrants protection from public
dissemination.

There is "good cause" to keep such information confidential.
This type of information is commonly safeguarded to protect the
privacy interests of those individuals mentioned in such
documents.  Prevention of public dissemination of such
information is reasonable because it is intended to avoid
harassment, embarrassment, annoyance, identity theft, and other
harm.  See, e.g., Kamakana, 447 F.3d at 1184.  Also, this type of
information can be removed from documents that are otherwise
eligible for public disclosure through redaction while still

-22-

allowing dissemination of the remainder of the contents of the documents.

Accordingly, the Court concludes that Bromgard's juvenile, jail, and prison records, as well as the names of criminal suspects, victims of crimes, non-government employee witnesses, and other identifying information, such as Social Security numbers, telephone numbers, addresses, photographs and fingerprints, and medical and psychological information about Bromgard or others, contained in any records or documents shall not be disseminated publicly in this action.  Such information must be redacted from all documents prior to dissemination to any individual or entity not a party to this litigation.[4]

Next, the Court addresses the bases upon which the State Defendants rely in seeking protection of the 14 specific categories of documents that they have identified as still at issue.

### a.   *Whether litigation materials are public*

The State Defendants rely primarily on Seattle Times v. Rhinehart, 467 U.S. 20 (1984), for the proposition that discovery documents in a civil case are not public and parties to litigation need not produce them to outside parties.  The Court concludes that the State Defendants' reliance on Seattle Times is

---

[4]Of course, for these purposes, the *Gazette* is not considered a party to this litigation.

misplaced.

First, the Court notes that it does not address herein the issue of whether the State Defendants must respond to a direct request by the *Gazette* or any other entity or individual seeking documents or information concerning this case.  That issue is not now before the Court.  Rather, the Court now addresses only the issue of whether documents and the information that they contain that fall under the Protective Order (Court's Doc. Nos. 54 and 75) *may* be disseminated to individuals or entities not parties to this litigation.

Second, the precise holding of Seattle Times does not reach the circumstances presented in this case.  In Seattle Times, the Supreme Court held that "where ... a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information gained from other sources, it does not offend the First Amendment."  467 U.S. at 37.

In this case, as already discussed, the Protective Order was not entered on a showing of "good cause," but only upon the parties' stipulation and the Court's assent.  Thus, Seattle Times does not control here and does not, as State Defendants argue, entirely preclude the dissemination of pretrial discovery material.  See, e.g., San Jose Mercury News, Inc. v. U.S. Dist. Ct., 187 F.3d 1096, 1103 (9th Cir. 1999) (citations omitted) ("It

is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."). Accordingly, the Court rejects this basis as "good cause," by itself, for the wholesale protection of litigation materials and information as urged by the State Defendants.

### b. *Whether the right to privacy protects information*

As already discussed *supra*, the Court concludes that "good cause" exists for protecting certain information contained in discovery documents. Again, the names of criminal suspects, victims of crimes, non-government employee witnesses, and other identifying information, such as Social Security numbers, telephone numbers, addresses, photographs and fingerprints, and medical and psychological information about Bromgard or others, shall not be disseminated publicly in this action. Such information must be redacted from all documents prior to dissemination to any individual or entity not a party to this litigation. The Court addresses below the issue of allocating the costs involved with redaction of protected information.

### c. *Whether information that may be inadmissible at trial should be protected so as not to taint the jury venire*

The Court is not persuaded by the State Defendants' argument that the potential inadmissibility of certain information at trial renders it subject to protection from dissemination before trial. The State Defendants have cited no authority for this

proposition, and the Court is aware of none, other than the general right of all persons to a fair trial.

Also, the State Defendants' argument in this regard would require the Court to assess the admissibility of certain evidence now, well in advance of trial, in determining what information ought to be protected from public dissemination.  This process would hinder the orderly administration of justice.

Finally, as noted above, "the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."  San Jose Mercury News, 187 F.3d at 1103. Here, good cause has not been shown to preclude dissemination of information except as to a limited amount of information already discussed.  There is no exception to this general rule for information that may later be deemed inadmissible.

> **_d.      Whether depositions and discovery responses that contain commentary and testimony by Bromgard's counsel that is allegedly inflammatory or argumentative should be protected from dissemination because it would be prejudicial to the parties and deprive them of the right to a fair trial_**

State Defendants point to examples of commentary that Bromgard's counsel has made during depositions that they believe is "inflammatory or argumentative" and would, if disseminated publicly, deprive them of the right to an impartial trial.  The Court has reviewed the examples submitted.  Having done so, the Court cannot conclude that inclusion of statements from

Bromgard's counsel in depositions satisfies the "good cause" standard for withholding such documents from public dissemination.

The Court does not condone the practices of making "speaking objections" during depositions, repeatedly interrupting an examination without valid bases, rephrasing questions posed by counsel conducting the examination, or answering questions for a witness.  Although the Court has found, in the deposition examples offered by State Defendants, each of these improper practices by Bromgard's counsel, the Court nevertheless cannot conclude that the presence of such improper practices in the depositions amounts to "good cause" to protect the depositions from public dissemination.

Again, the standard that must be met to preclude public dissemination of information is a "showing that specific prejudice or harm will result if no protective order is granted." Foltz, 331 F.3d 1130-31 (citing Phillips, 307 F.3d at 1210-11). Here, the State Defendants' concern that they will be deprived of an impartial trial if statements made by Bromgard's counsel in depositions are not protected from dissemination to the public is too speculative to satisfy the requirement that "specific prejudice or harm will result" if there is no protection.  Thus, State Defendants have not made the requisite showing of "good cause" to warrant protection of the depositions as a whole.

-27-

>    **e.    _Whether documents and depositions that_**
>    **_contain information protected by the MCJIA_**
>    **_should be protected from dissemination_**

Again, the Court concludes that "good cause" exists for
protecting certain information contained in discovery documents.
As already determined, Bromgard's juvenile, jail, and prison
records, as well as the names of criminal suspects, victims of
crimes, non-government employee witnesses, and other identifying
information, such as Social Security numbers, telephone numbers,
addresses, photographs and fingerprints, and medical and
psychological information about Bromgard or others, contained in
any documents shall not be disseminated publicly in this action.
Such information must be redacted from all documents prior to
dissemination to any individual or entity not a party to this
litigation.

>    **f.    _Whether documents that contain attorney work_**
>    **_product and mental impressions or are subject_**
>    **_to attorney-client privilege should be_**
>    **_protected from dissemination_**

The Court is not persuaded by the State Defendants' argument
that some materials already produced by them to Bromgard should
be protected from public dissemination because they contain
information subject to the attorney-client privilege or attorney
work product.  The materials of concern to the State Defendants
have already been produced to Bromgard.  Thus, State Defendants
have waived protection.  See, e.g., Chevron Corp. v. Pennzoil

Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (voluntary disclosure of privileged communication constitutes waiver of privilege) (citations omitted).

More importantly, State Defendants have not shown what "specific prejudice or harm will result if no protective order is granted" with respect to the subject information. Foltz, 331 F.3d 1130-31 (citing Phillips, 307 F.3d at 1210-11). Rather, they make only the blanket assertion that "[f]urther production of this material to the public compounds the problem." *State Defts' Br. at 13.* This assertion does not satisfy the requisite showing of "good cause" for the protection of this information from public dissemination.

> ### g.   *Whether the production of discovery materials would be unduly burdensome, costly, and distracting, and whether redaction of such materials would be unduly burdensome, costly, and distracting*

The State Defendants argue that the review and redaction of material would be an unduly burdensome, costly, and distracting task because, by their estimate, approximately 28,000 pages of documents are involved. *State Defts' Br. at 11-12.* They further argue that, should the Court determine that preclusion of public dissemination of information is not appropriate, the requestor of information disclosed should bear the cost of redaction and reproduction of documents. *Id.*

As noted herein, the State Defendants have not made a

showing of "good cause" to protect much of the information involved from public dissemination. The Court has broad discretion to control pretrial discovery, including determining appropriate protection of involved documents and setting the terms and conditions of disclosure. See, e.g., Flatow, 308 F.3d at 1074. As discussed, redaction will be necessary to protect certain information for which "good cause" has been shown. As discussed below, the Court concludes that resolution of the issue of who should incur the cost, including reasonable attorneys' fees involved in redaction, depends upon the purpose for which the information is used.

With respect to documents attached to dispositive motions, the Court concludes that the party who files the document requiring redaction will bear the expense of redaction.[5] With respect to all other documents, the party who agrees to provide any documents to an individual or entity that is not a party to this action is ultimately responsible for ensuring that proper redaction occurs and cannot rely on the party that produced the document to perform or pay for the necessary redactions. See *Stipulated Protective Order dated June 28, 2005* (Court's Doc. No.

---

[5]Local Rule 7.2 allows as an attachment only that portion of a document germane to the matter under the Court's consideration (*e.g.*, a portion of a deposition). The filing party is responsible for the redaction only of the portion actually filed. Should a party wish to provide the remainder of the document to an individual or entity that is not a party to this action, the party providing the remainder of the document is responsible for the redaction of whatever portion of the document it provides to another individual or entity.

54) *at ¶ 5.*  The providing party is, of course, free to negotiate the cost of such redactions with the requestor.

### 3.  *Specific Categories of Documents*

The State Defendants have listed 14 categories of documents that they believe are entitled to protection. The Court already has determined that the State Defendants have not shown "good cause" to protect much of the information. The Court has concluded, however, that some information contained in some documents must be redacted before those documents may be publicly disseminated.  The items of information that must be redacted are the names of criminal suspects, victims of crimes, non-government employee witnesses, and other identifying information, such as Social Security numbers, telephone numbers, addresses, photographs and fingerprints, and medical and psychological information about Bromgard or others.

In addition to the foregoing, and with respect to the 14 categories of information identified by the State Defendants, the Court concludes that "good cause" exists for redaction of all telephone numbers and addresses of private individuals, government employees, and non-government employees.  Such protection is necessary for those individuals to avoid harassment, embarrassment, annoyance, identity theft, and other harm.

The Court also concludes that "good cause" exists to protect

the following documents, in their entirety, from dissemination to
individuals or entities that are not parties to this case:

(1) documents numbered 85 and 147 in State Defendants'
second amended privilege log warrant protection because
they are privileged as the Court determined in its
Order filed May 2, 2006 (Court's Doc. No. 96) at 5;

(2) Defendant Arnold Melnikoff's personnel records,
including his employment records, Washington State
Police testing records, and the Washington State Police
investigation file concerning him, Bromgard's personnel
records, including all of his employment records, and
the employment records of any other individual that may
be produced in this case all warrant protection to help
the subject in the documents avoid harassment,
embarrassment, annoyance, identity theft, and other
harm;

(3) the spreadsheet regarding the State Defendants'
search for evidence in this case (submitted as In
Camera Exhibit W) warrants protection because it is
work product.

## IV.   *CONCLUSION*

For the reasons stated herein,

IT IS ORDERED that the addendum (Court's Doc. No. 75) to the
stipulated protective order is VACATED.  The stipulated

protective order (Court's Doc. No. 54), together with the

provisions of this Order, shall govern with respect to protection

of confidential information.

DATED this 13th day of September, 2007.


/S/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge